# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

JANE AMSU DOE, by next friend JOHN AMSU DOE, JANE BMSU DOE, JANE CMSU DOE, JANE DMSU DOE, JANE EMSU DOE, JANE FMSU DOE, JANE GMSU DOE, JANE HMSU DOE, JANE IMSU DOE, JANE JMSU DOE, JANE KMSU DOE, JANE LMSU DOE, JOHN BMSU DOE, JOHN DMSU DOE, JOHN HMSU DOE, JOHN IMSU DOE, JANE MMSU DOE, JANE NMSU DOE, JANE OMSU DOE, JANE PMSU DOE, JANE QMSU DOE, JANE RMSU DOE, JANE SMSU DOE, and JANE TMSU DOE,

Case No.: _____

Hon. _____

Complaint and Jury Demand

A civil action between these parties or other parties arising out of the transaction or occurrence alleged in this complaint has been previously filed in this court, where it was given docket number 1:17-cv-29 and was assigned to Judge Quist. That action remains pending.

Plaintiffs,

v

MICHIGAN STATE UNIVERSITY; THE BOARD  OF TRUSTEES OF MICHIGAN STATE UNIVERSITY; LAWRENCE GERARD NASSAR (individual and official capacity); KATHIE KLAGES (individual and official capacity); WILLIAM D. STRAMPEL, D.O. (individual and official capacity); JEFFREY R. KOVAN D.O. (individual and official capacity); GARY E. STOLLAK (individual and official capacity); USA GYMNASTICS, INC.; TWISTARS USA, INC. d/b/a GEDDERTS' TWISTARS GYMNASTICS CLUB USA, and JOHN GEDDERT

_____

David S. Mittleman (P37490)
Mick S. Grewal (P48082)
Nolan L. Erickson (P72661)
ChurchWyble PC, a division of
Grewal Law, PLLC
Attorneys for Plaintiffs
2290 Science Parkway
Okemos, Michigan 48864
Ph.: (517) 372-1011
Fax: (517) 372-1031
E: dmittleman@churchwyble.com
E: mgrewal@4grewal.com
E: nerickson@churchwyble.com

1

# TABLE OF CONTENTS

COMPLAINT AND JURY DEMAND ..................................................................6

I. PRELIMINARY STATEMENT AND INTRODUCTION ...........................................6

II. JURISDICTION AND VENUE...............................................................................12

III. PARTIES AND KEY INDIVIDUALS ..................................................................13

IV. COMMON FACTUAL ALLEGATIONS ..............................................................17

V. SPECIFIC FACTUAL ALLEGATIONS ................................................................25

    A. Jane AMSU Doe ..........................................................................................25

    B. Jane BMSU Doe...........................................................................................27

    C. Jane CMSU Doe...........................................................................................30

    D. Jane DMSU Doe ..........................................................................................31

    E. Jane EMSU Doe ..........................................................................................32

    F. Jane FMSU Doe ...........................................................................................33

    G Jane GMSU Doe ..........................................................................................34

    H. Jane HMSU Doe ..........................................................................................35

    I. Jane IMSU Doe .............................................................................................36

    J. Jane JMSU Doe ............................................................................................38

    K. Jane KMSU Doe ..........................................................................................38

    L. Jane LMSU Doe ..........................................................................................39

    M. Jane MMSU Doe .........................................................................................40

    N. Jane NMSU Doe ..........................................................................................41

    O. Jane OMSU Doe ..........................................................................................42

P. Jane PMSU Doe ..........................................................................................43

Q. Jane QMSU Doe .........................................................................................44

R. Jane RMSU Doe ..........................................................................................45

S. Jane SMSU Doe ..........................................................................................45

T. Jane TMSU Doe ..........................................................................................46

VI. CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS.......................47

    A. COUNT ONE – Violations of Title IX ........................................................47

    B. COUNT TWO – Violations of Civil Rights, 42 U.S.C. §1983...................51

    C. COUNT THREE – Violations of Elliot-Larsen Civil Rights Act...............55

    D. COUNT FOUR – Failure to Train and Supervise, 42 U.S.C. §1983...........57

    E. COUNT FIVE – Gross Negligence .............................................................59

    F. COUNT SIX– Negligence ..........................................................................61

    G. COUNT SEVEN– Vicarious Liability.......................................................63

    H. COUNT EIGHT – Express/Implied Agency ..............................................64

    I. COUNT NINE – Negligent Supervision .....................................................65

    J. COUNT TEN – Negligent Failure to Warn or Protect................................67

    K. COUNT ELEVEN– Negligent Failure to Train or Educate .......................69

    L. COUNT TWELEVE– Negligent Retention ...............................................70

    M. COUNT THIRTEEN - Intentional Infliction of Emotional Distress .........71

    N. COUNT FOURTEEN – Fraud and Misrepresentation ...............................73

VII. CLAIMS AGAINST USA GYMNASTICS ..........................................................75

    A. COUNT FIFTEEN – Gross Negligence .....................................................76

B. COUNT SIXTEEN – Negligence .................................................................77

C. COUNT SEVENTEEN – Vicarious Liability .............................................79

D. COUNT EIGHTEEN – Express/Implied Agency ...................................... 80

E. COUNT NINETEEN – Negligent Supervision .........................................81

F. COUNT TWENTY – Negligent Failure to Warn or Protect ......................82

G. COUNT TWENTY-ONE – Negligent Failure to Train or Educate ..........84

H. COUNT TWENTY-TWO – Negligent Retention ......................................85

I. COUNT TWENTY-THREE – Intentional Infliction of Emotional Distress ................86

J. COUNT TWENTY-FOUR - Fraud and Misrepresentation ..........................87

VIII. CLAIMS AGAINST TWISTARS ......................................................................88

A. COUNT TWENTY-FIVE – Gross Negligence .........................................88

B. COUNT TWENTY-SIX – Negligence  ......................................................90

C. COUNT TWENTY-SEVEN – Express/Implied Agency  ..........................91

D. COUNT TWENTY-EIGHT – Negligent Supervision.................................92

E. COUNT TWENTY-NINE – Negligent Failure to Warn or Protect...........94

F. COUNT THIRTY - Intentional Infliction of Emotional Distress  .............96

G. COUNT THIRTY-ONE – Fraud and Misrepresentation.............................97

IX. CLAIMS AGAINST NASSAR ...........................................................................98

A. COUNT THIRTY-TWO – Assault and Battery ........................................98

B. COUNT THIRTY-THREE– Intentional Infliction of Emotional Distress ................100

C. COUNT THIRTY-FOUR – Invasion of Privacy ......................................101

X. CLAIMS AGAINST ALL DEFENDANTS ........................................................102

A. COUNT THIRTY-FIVE – Loss of Consortium .......................................102

XI. DAMAGES.................................................................................................................103

REQUEST FOR RELIEF .............................................................................................103

JURY DEMAND ............................................................................................................105

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys CHURCHWYBLE, P.C., a division of GREWAL LAW, PLLC, and hereby allege and state as follows:

## I. PRELIMINARY STATEMENT AND INTRODUCTION

1.   This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O., Michigan State University ("MSU"), USA Gymnastics ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiffs, all female, many of whom were minors when the sexual assaults took place.

2.   Plaintiffs are or were young athletes participating in youth sports, including gymnastics, swimming and dancing.

3.   Defendant Nassar came highly recommended to Plaintiffs as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.   Plaintiffs and their parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.   From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

6.   From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7.      For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars, who referred athletes to his care.

8.      To gain Plaintiffs' trust, at appointments, Defendant Nassar would give some Plaintiffs gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without.

9.      Between 1996 and 2016, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs, many of whom were minors during at least some portion of this time, by nonconsensual vaginal and anal digital penetration or by rubbing their breasts, and without the use of gloves or lubricant.

10.     Plaintiffs were seeking treatment for various pain and functional complaints, such as back pain, neck pain, shoulder pain, knee pain, hip pain, and other similar injuries and conditions.

11.     In 1997 or 1998, an athlete reported to MSU gymnastics coach Kathie Klages concerns regarding Defendant Nassar's conduct and "treatment," but Defendant Klages dissuaded the athlete from completing a formal report by warning the athlete the report would have serious consequences for her (the athlete) and Nassar.

12.     As a result of Defendant Klages being informed about Nassar's conduct, at least one other athlete was asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on her (the athlete), and the athlete responded in the affirmative. Defendant Klages told the athlete that there is no reason to bring up Nassar's conduct.

13.    In 1999, a MSU student athlete reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

14.    In 2000, another MSU student athlete reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

15.    Many Plaintiffs were seen alone with only the individual Plaintiff and Defendant Nassar in the room, without chaperones.

16.    At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

17.    Because MSU took no action to investigate the 1997 or 1998, 1999, and 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, several of the Plaintiffs were sexually assaulted, abused, and molested by Defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant and by nonconsensual touching and groping of their breasts.

18.    Additional complaints regarding Defendant Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.[1]

---

[1] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. (Last accessed January 5, 2017.)

19.   Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

    a. Defendant Nassar was sexually aroused while touching her;

    b. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

20.   Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[2]

21.   Following the investigation, upon information and belief Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[3]

22.   Defendant Nassar continued to treat patients alone.

23.   Following the investigation, between approximately 2014 and 2016, additional girls and young women were sexually assaulted by Defendant Nassar.

24.   Through his position with MSU, his notoriety, and support by USAG and Twistars, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiffs without any reasonable supervision by MSU or USAG.

_____

[2] *Id.*
[3] *Id.*

9

25.     Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiffs or their parents.

26.     All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University or at Twistars.

27.     The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs or their parents robbed them of the opportunity to reject the "treatment."

28.     Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

29.     In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included Plaintiff Denhollander's allegations against Defendant Nassar.

30.     Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

31.     Plaintiffs have been forced to relive the trauma of the sexual assaults.

32.     In summer 2015, USAG relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG failed to inform Michigan State University of the circumstances regarding his dismissal.

33.     As early as 1997, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiffs through approximately 2016.

34.     Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiffs was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq*., 42 U.S. C. §1983, as well as other Federal and State laws.

35.     MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in violation of Michigan common law.

36.     In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[4] The case has been bound over to circuit court. Twenty-two additional counts were recently added.

37.     In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

38.     The acts, conduct, and omissions of Defendants Michigan State University, USA Gymnastics, and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiffs and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiffs by Defendant Nassar, which has been devastating for Plaintiffs and their families.

39.     This action arises from Defendants' blatant disregard for Plaintiffs' federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

---

[4] State of Michigan, Ingham County Circuit Court Case No. 1603031.

## II. JURISDICTION AND VENUE

40.   This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq*., as more fully set forth herein.

41.   This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

42.   Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

43.   Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

44.   Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

45.   The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20 U.S.C. §1681 *et seq*., and under Michigan Law.

46.    The events giving rise to this lawsuit occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

47.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

### III. PARTIES AND KEY INDIVIDUALS

48.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

49.    The names of the Plaintiffs have been withheld from this Complaint to protect their identities as many of the Plaintiffs were minor children at the time the sexual abuse occurred and the allegations involve injuries of a personal and sensitive nature.[5]

50.    Plaintiff Jane AMSU Doe is a minor female and is a resident of Michigan.  She brings this action by John AMSU Doe, also a resident of Michigan.  A corresponding petition seeking formal appointment of next friend will be filed.

51.    Plaintiff Jane BMSU Doe is a married female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.  She is married to John BMSU Doe.

52.    Plaintiff Jane CMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

---

[5] Plaintiffs will seek an Order of the Court regarding disclosure of Plaintiffs' identities and all conditions for disclosure.

53.     Plaintiff Jane DMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.  She is married to John DMSU Doe.

54.     Plaintiff Jane EMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

55.     Plaintiff Jane FMSU Doe is an adult female and is a resident of Michigan.

56.     Plaintiff Jane GMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

57.     Plaintiff Jane HMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

58.     Plaintiff Jane IMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.  She is married to John IMSU Doe.

59.     Plaintiff Jane JMSU Doe is an adult female and is a resident of Michigan.

60.     Plaintiff Jane KMSU Doe is a female and is a resident of Michigan.

61.     Plaintiff Jane LMSU Doe is a female and is a resident of Illinois. She was a minor for at least a portion of the times she was sexually assaulted, abused, and molested by Defendant Nassar.

62.    Plaintiff Jane MMSU Doe is an adult female and is a resident of Ohio.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

63.    Plaintiff Jane NMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

64.    Plaintiff Jane OMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

65.    Plaintiff Jane PMSU Doe is an adult female and is a resident of Kentucky.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

66.    Plaintiff Jane QMSU Doe is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

67.    Plaintiff Jane RMSU Doe is an adult female and is a resident of Michigan.

68.    Plaintiff Jane SMSU Doe is an adult female and is a resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

69.    Plaintiff Jane TMSU Doe is an adult female and is a resident of Wisconsin. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

70.    Defendant Lawrence "Larry" Nassar, is a Doctor of Osteopathic Medicine, and is a resident of Michigan.

71.    Defendant Michigan State University (hereinafter, "Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

72.    Defendant Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

73.    Defendant The Board of Trustees of Michigan State University (hereinafter, "Defendant MSU Trustees") is the governing body for Michigan State University.

74.    Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

75.    Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Ms. Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

76.    M. Peter McPherson is the immediate Past President of Defendant MSU, and served as President from approximately 1993 – 2004.

77.    Defendant William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at Michigan State University serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

78.    Defendant Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at Michigan State University.

16

79.     Defendant Kathie Klages was the head coach of the Michigan State University Gymnastics Program until her suspension and resignation in early 2017; she also conducted gymnastics classes and programs for children and young adults not on the varsity gymnastics team.

80.     Defendant Gary E. Stollak was a professor in the clinical program within the Michigan State University Department of Psychology.

81.     Defendant United States of America Gymnastics (hereinafter "Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

82.     Steve Penny is the current president of Defendant USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of Defendant USAG.

83.     Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

84.     Defendant Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA (hereinafter, "Defendant Twistars") was and continues to be an organization incorporated in Michigan.

85.     Defendant John Geddert is the owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA.

### IV. COMMON FACTUAL ALLEGATIONS

86.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

87.   At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing, Michigan.

88.   At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

89.   At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

90.   At all relevant times, including the years 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

91.   At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his agency with Defendant Twistars.

92.   Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

93.   Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

> a. Certified Athletic Trainer;
>
> b. Osteopathic Physician;
>
> c. National Medical Director;
>
> d. National Team Physician, USA Gymnastics;
>
> e. National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

94.   Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

a. Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

b. Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

c. Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

d. Team Physician, Defendant MSU's Men's and Women's Crew Team;

e. Team Physician, Defendant MSU's Intercollegiate Athletics;

f. Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

g. Advisor, Student Osteopathic Association of Sports Medicine.

95. Defendant Twistars is a gymnastics facility with which Defendant Nassar affiliated from its inception in or around 1996.

96. Defendant John Geddert, owner and operator of Twistars USA, Inc. d/b/a Geddert's Twistars Gymnastics Club USA served as the USA World and Olympic Women's Gymnastics Team Head Coach.

97. Defendant Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician.

98. For a period of time, Defendant Twistars displayed a photo of Defendant Nassar at its facility.

99. As an agent of Defendant Twistars, Defendant Nassar regularly provided services and treatment to Defendant Twistars' members and Defendant USAG's members on Defendant Twistars' premises.

100. As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

101.   Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

102.   While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

103.   During his employment, agency, and representation with the MSU Defendants, Defendant USAG, and Defendant Twistars, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration.

104.   The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[6]

105.   In 1997 or 1998, a female gymnastics participant, who was a minor at the time, told MSU gymnastics head coach Kathie Klages about concerns the participant had with Nassar's "treatment."  Defendant Klages convinced the participant not to file a formal complaint because Klages intimidated the participant by stating there would be serious consequences to her (the participant) and Nassar.

106.   As a result of Klages being informed about Nassar's conduct, at least one other athlete was asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on her (the athlete), and the athlete responded in the affirmative. Klages told the athlete that there is no reason to bring up Nassar's conduct.

---

[6] *See*, Michigan Administrative Code, R. 325.70001, et seq., Available at http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, January 5, 2017.

107.    In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Defendant Geddert regarding Dr. Nassar's conduct, yet the concerns and allegations went unaddressed.

108.    In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by a MSU student athlete after she complained to MSU employees, including trainers and her head coach, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

109.    Despite her complaints to MSU representatives, the athlete's concerns and allegations went unaddressed.

110.    In approximately 2000, a female student athlete, a member of Defendant MSU's Women's Softball Team, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.

111.    Despite her complaints to MSU employees, agents, and representatives, the athlete's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

112.    Because MSU took no action to investigate the 1997 or 1998, 1999, and 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, several Plaintiffs were also sexually assaulted, abused, and molested by Defendant Nassar by vaginal and anal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

113.    Upon information and belief, Defendant Gary E. Stollak was told by a minor female patient that she had been abused by Defendant Nassar.

114.    Defendant Stollak did not report the abuse.

115.    In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.[7]

116.    The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[8]

117.    While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[9]

---

[7] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

[8] *See,* Resolution Agreement, August 28, 2015, OCR Document #15-11-2098, #15-14-2133. Available at, https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf. Last accessed January 5, 2017.

[9] *See,* At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault- harassment-larry-nassar/94993582/. Last accessed January 5, 2017.

118.    Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

119.    However, the victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following

        a. Defendant Nassar was sexually aroused while touching her;

        b. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

120.    Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[10]

121.    Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[11]

122.    After receiving allegations of "athlete concerns," in approximately summer 2015 Defendant USAG relieved Defendant Nassar of his duties.[12]

123.    At no time did Defendant USAG inform Defendants MSU, MSU Trustees, or other MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG.

---

[10] *Id.*

[11] *Id.*

[12] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

124.    From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

125.    Plaintiffs were not made aware of Defendant Nassar's widespread sexual abuse until on or around September 12, 2016 or shortly thereafter through related media coverage.[13]

126.    Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

   a. Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[14] and,

   b. A former patient of Defendant Nassar, Plaintiff Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Plaintiff Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

      A. Massaging her genitals;

      B. Penetrating her vagina and anus with his finger and thumb; and,

      C. Unhooking her bra and massaging her breasts.[15]

---

[13] *Id.*
[14] *See*, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/ documents/3106054-JANE-JD-COMPLAINT-Signed.html. Last accessed, January 5, 2017.
[15] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/ former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

127.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on $1 million bond.[16]  The case has been bound over to Circuit Court. Twenty-two additional counts were recently added.

128.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

129.    According to the federal indictment,[17] Defendant Nassar:

    a. Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

    b. Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

130.    To the best of Plaintiffs' knowledge, Defendant Nassar is in federal custody pending the child pornography criminal charges.

## V. SPECIFIC FACTUAL ALLEGATIONS

### A. JANE AMSU DOE

131.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

132.    Jane AMSU Doe is a 15-year-old female who, in March of 2014, was a gymnast.

---

[16] State of Michigan, Ingham County Circuit Court Case No. 1603031.
[17] 1:16-cr-00242 PageID.1-4.

133. On or about March 10, 2014, Jane AMSU Doe was seen as a patient by Lawrence Nassar, D.O., at Michigan State University Sports Medicine Clinic, located at 4660 South Hagadorn Road, Suite 420, in East Lansing, Michigan. Her chief complaint was back pain.

134. Following that visit, Jane AMSU Doe was seen by Dr. Nassar on at least six other occasions.

135. Over the course of this two-year period, Dr. Nassar engaged in gradually more and more inappropriate sexual touching to which Jane AMSU Doe, a minor, did not consent.

136. Dr. Nassar would rest his fingers on Jane AMSU Doe's genitals and move her underwear away, often without wearing gloves.

137. Dr. Nassar would have Jane AMSU Doe wear a medical gown, then stand in front of her and ask her to bend over.

138. Dr. Nassar conducted acupuncture near Jane AMSU Doe's genitals and frequently grabbed her butt.

139. Jane AMSU Doe was told not to call Dr. Nassar at the office, but rather to text his phone.

140. Dr. Nassar offered an appointment at his private residence, which Jane AMSU Doe refused.

141. Some or all of this conduct occurred after Michigan State University imposed a particular protocol for Nassar, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

142. Michigan State University and MSU Sports Medicine had received notice of Nassar's inappropriate conduct on multiple occasions dating back to at least 1997.

143.   These actions were intentionally and fraudulently concealed and not documented in the medical record.

144.   Jane AMSU Doe, a minor, believed the conduct of Dr. Nassar constituted medical treatment and did not discover or become aware that said conduct breached the standard of care or practice or was otherwise unlawful or tortious until the allegations against Dr. Nassar and Michigan State University were recently made public.

145.   Plaintiff Jane AMSU Doe did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

146.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane AMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**B. JANE BMSU DOE**

147.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

148.   In approximately 1997, Plaintiff Jane BMSU Doe was training with MSU Youth Gymnastics, under the instruction of Kathie Klages.

149.   After Plaintiff began experiencing low back pain, Klages instructed Plaintiff to seek treatment with Nassar.

150.   During her visits with Nassar, Plaintiff Jane BMSU Doe would visit Nassar at his office at MSU's Sports Medicine Clinic, which is located on or adjacent to MSU's East Lansing, Michigan campus.  Plaintiff Jane BMSU Doe was also seen on occasion in Jenison Fieldhouse, which is located on MSU's campus.

27

151.   Plaintiff treated with Nassar from approximately 1997 until late 1999.

152.   For over two years, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves or lubricant and without Plaintiff's consent or the consent of Plaintiff's parents.

153.   Plaintiff Jane BMSU Doe was a minor when many instances of the sexual abuse happened, as she did not reach the age of majority until late 1998.

154.   Nassar would begin "treatments" by asking Plaintiff Jane BMSU Doe to completely disrobe from the waist down. Then, Nassar would have Plaintiff lie on the examining table, usually face-down. Nassar would then digitally penetrate Plaintiff's vagina and rub very hard while he made grunting noises.  Nassar would occasionally rest his thumb or finger on Plaintiff's anus.   Plaintiff often perceived that Nassar was aroused during these "treatments."

155.   Nassar represented that these "treatments" were for the purpose of alleviating Plaintiff's low back pain.

156.   Nassar would not wear gloves during these "treatments."

157.   On at least one occasion, Nassar asked Plaintiff about her sex life and in particular whether she performed oral sex on her then-boyfriend.

158.   These "treatments" would occur approximately once per week at first, gradually decreasing to once every two weeks.

159.   Plaintiff did not treat and never intended to treat with Nassar for OB/GYN issues.

160.   Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff or Plaintiff's parents even though she was a minor at the time.

28

161.    Neither Plaintiff nor Plaintiff's parents consented to any touching, rubbing, or digital penetration of Plaintiff's vagina.

162.    Nassar attempted to create for himself a position of trust with both Plaintiff and Plaintiff's parents by, among other things, asking Plaintiff to call him "Larry" instead of "Dr. Nassar."

163.    Sometime in late 1997 to mid 1998, when Plaintiff was 16 or 17 years old, Plaintiff Jane BMSU Doe told Defendant Kathie Klages that Plaintiff was concerned about the "treatments" provided by Nassar.  Klages explained that she had known Nassar for years and could not imagine him doing anything questionable.  Defendant Klages told Plaintiff that she (Plaintiff) must be "misunderstanding" or "reading into" what Nassar was doing. Klages explained that she (Klages) could file something, but that it would have serious consequences for Plaintiff and for Nassar.  This conversation left Plaintiff feeling intimidated, embarrassed, and scared, and caused Plaintiff to believe that nothing illegal or tortious was happening.

164.    At her next appointment with Defendant Nassar, Nassar indicated Klages called him to inform him of Plaintiff's conversation with Klages.  Nassar proceeded to tell Plaintiff Jane BMSU Doe that she (Plaintiff) "was not understanding a proper medical treatment." Nassar proceeded to commit another sexual assault at that appointment.

165.    In approximately September of 2016, Plaintiff Jane BMSU Doe became aware of allegations of sexual abuse against Nassar.

166.    These actions were intentionally and fraudulently concealed and not documented in the medical record.

167.    Jane BMSU Doe, a minor at the time, believed the conduct of Dr. Nassar constituted medical treatment and did not discover or become aware that said conduct breached the

standard of care or practice or was otherwise unlawful or tortious until the allegations against Dr. Nassar and Michigan State University were recently made public.

168. Plaintiff Jane BMSU Doe did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

169. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane BMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**C. JANE CMSU DOE**

170. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

171. Plaintiff Jane CMSU Doe treated with Dr. Nassar, first at Twistars and then his office at MSU, from 2004 to approximately 2013.

172. In 2004, Plaintiff Jane CMSU Doe was a minor, 11 or 12 years old.

173. Plaintiff Jane CMSU Doe presented to Dr. Nassar with complaints of injuries to her ribs and back suffered through gymnastics.

174. Between 2004 and approximately 2013, at appointments at his office at MSU, Defendant Nassar would remove Plaintiff Jane CMSU Doe's sports bra, massage her breasts, pull down her pants and rub her butt with his thumb penetrating her anus and causing bleeding, and engage in other similar conduct under the guise of performing "treatment."

175. On one occasion, Defendant Nassar's finger slipped while massaging Jane CMSU Doe, cutting her labia minora with his fingernail.

30

176.   Defendant Nassar would engage in inappropriate sexual dialog with Plaintiff Jane CMSU Doe.

177.   On several occasions, Defendant Nassar would perform the above-described "treatment" while Plaintiff CMSU Doe's mother was in the examination room.

178.   On multiple occasions during these treatments, Plaintiff Jane CMSU Doe witnessed Defendant Nassar sexually aroused and Defendant Nassar's erection would come into contact with Plaintiff CMSU Doe's body.

179.   Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane CMSU Doe's vagina, anus, or breasts.

180.   Defendant Nassar frightened Plaintiff Jane CMSU Doe into quitting gymnastics by telling her she could become paralyzed.

181.   Plaintiff Jane CMSU Doe did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

182.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane CMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**D. JANE DMSU DOE**

183.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

184.   Plaintiff Jane DMSU Doe treated with Defendant Nassar at his office at MSU beginning in 1996.

185.   At that time, Jane DMSU Doe was a minor, approximately 16 or 17 years old.

186.    Plaintiff Jane DMSU Doe presented to Defendant Nassar with complaints of back pain.

187.    At an appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane DMSU Doe's vagina multiple times without prior notice.

188.    Defendant Nassar did not give prior notice or obtain consent for digital penetration.

189.    Plaintiff Jane DMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

190.    Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane DMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**E. JANE EMSU DOE**

191.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

192.    Plaintiff Jane EMSU Doe was a participant in youth gymnastics programs.

193.    Plaintiff treated with Dr. Nassar from 2005 to 2007 at his office at MSU.

194.    Plaintiff Jane EMSU Doe presented to Dr. Nassar with complaints of knee, leg, and back pain.

195.    At the time of her "treatments" with Defendant Nassar, Plaintiff EMSU Doe was a minor, approximately 16 years old when she began seeing him.

196.    Defendant Nassar diagnosed Plaintiff EMSU Doe with a fracture in her back, though no other doctor offered that diagnosis.

197.    On several occasions, at appointments at his office at MSU, Defendant Nassar sexually assaulted Plaintiff Jane EMSU Doe.

198. Plaintiff Jane EMSU Doe's mother would attend these appointments with her, but Defendant Nassar would position himself in such a way as to prevent observation of his conduct.

199. On one occasion, Defendant Nassar explained that he could relieve Plaintiff's leg pain by manipulating a bundle of nerves near Plaintiff's genitals.

200. Defendant Nassar did not give prior notice or obtain consent for his conduct.

201. Plaintiff Jane EMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

202. Shortly after beginning her "treatments" with Defendant Nassar, Plaintiff EMSU Doe developed an eating disorder and depression, resulting in the termination of her gymnastics career.

203. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane DMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**F. JANE FMSU DOE**

204. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

205. Plaintiff Jane FMSU Doe treated with Dr. Nassar between December 2008 and May 2009 at his office at MSU.

206. Plaintiff FMSU Doe was a dancer, cheerleader, and gymnast during that time.

207. Plaintiff Jane FMSU Doe presented to Defendant Nassar with complaints of lower back pain, specifically a tailbone injury sustained during cheerleading.

208.    On approximately eight separate occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff Jane FMSU Doe's vagina and anus without prior notice and without gloves or lubricant.

209.    Plaintiff Jane FMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

210.    Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane DMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**G. JANE GMSU DOE**

211.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

212.    Plaintiff Jane GMSU Doe treated with Dr. Nassar at his office at MSU from 1999 to 2004.

213.    In 1999, Plaintiff Jane GMSU Doe was a minor, 15 years old, and a virgin.

214.    Plaintiff Jane GMSU Doe presented to Dr. Nassar with complaints of injuries to her hip suffered through playing soccer.

215.    Between 1999 and 2004, at appointments at his office at MSU, Defendant Nassar would direct Plaintiff Jane GMSU Does to disrobe from the waist down, begin "massaging" her, and then conduct what Nassar described as a "spinal evaluation" involving digital vaginal and anal penetration without gloves.

216.    Defendant Nassar would engage in inappropriate sexual dialog with Plaintiff Jane GMSU Doe.

217.   These "treatments" would occur approximately 3 times per month, and the vast majority occurred when no one else was present in the examination room.

218.   On multiple occasions during these "treatments," Plaintiff Jane GMSU Doe perceived Defendant Nassar to be grunting and breathing heavily.  Following the "treatments," Nassar would look Plaintiff directly in the eye, ask her if she felt better, and hug her.

219.   Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane GMSU Doe's vagina, anus, or breasts.

220.   Defendant Nassar gave Plaintiff GMSU Doe several gifts to win her trust, including pictures and other trinkets.  Nassar also asked Plaintiff to call him "Larry" rather than "Dr. Nassar."

221.   Plaintiff Jane GMSU Doe did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

222.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane GMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## H. JANE HMSU DOE

223.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

224.   Plaintiff Jane HMSU Doe treated with Defendant Nassar at his office at MSU beginning in 1998.

225.   At that time, Jane HMSU Doe was a minor, approximately 17 years old.

226.    Plaintiff Jane HMSU Doe presented to Defendant Nassar with complaints of hip pain due to a gymnastics injury.

227.    At numerous appointments at his office at MSU, Defendant Nassar directed Plaintiff to lay on her stomach, he would massage her shoulders and back, and then digitally penetrate Plaintiff Jane HMSU Doe's vagina without prior notice.

228.    Defendant Nassar did not give prior notice or obtain consent for digital penetration.

229.    Plaintiff Jane HMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

230.    Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane HMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## I. JANE IMSU DOE

231.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

232.    Plaintiff Jane IMSU Doe was a participant in Spartan youth gymnastics programs.

233.    Plaintiff began treating with Defendant Nassar in 1997 at his office at MSU.  On occasion, Plaintiff would also see Defendant Nassar at Jenison Fieldhouse.

234.    Plaintiff Jane IMSU Doe presented to Dr. Nassar with complaints of low back pain approximately once a week.

235.    At the time of her "treatments" with Defendant Nassar, Plaintiff IMSU Doe was a minor, approximately 14 or 15 years old when she began seeing him and was a virgin.

36

236.  At the beginning of most of these appointments, Defendant Nassar would hug Jane IMSU Doe and take other steps to make her "feel special."

237.  Defendant Nassar engaged Plaintiff in sexually suggestive conversations, asking if she had a boyfriend and "how far" they would go in terms of sexual activity.

238.  On several occasions at appointments at his office at MSU Defendant Nassar sexually assaulted Plaintiff Jane IMSU Doe by engaging in digital vaginal and anal penetration.

239.  Plaintiff's parents would attend these appointments with her on occasion, but Defendant Nassar would position himself in such a way as to prevent observation of his conduct.

240.  During these "treatments," Plaintiff perceived Defendant Nassar to be aroused and making grunting noises.

241.  On at least one occasion, Plaintiff specifically declined the intervaginal "treatment," but Defendant Nassar held her down with the weight of his body and performed the "procedure" against Plaintiff's will.

242.  As a result of MSU gymnastics head coach Kathie Klages being informed by a fellow athlete of Defendant Nassar's conduct, Jane IMSU Doe was asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on her (Jane IMSU Doe), and Jane IMSU Doe responded in the affirmative. Klages told Jane IMSU Doe that there is no reason to bring up Nassar's conduct.

243.  Plaintiff Jane IMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

244.  Shortly after beginning her "treatments" with Defendant Nassar, Plaintiff IMSU Doe developed an eating disorder and depression, resulting in the termination of her gymnastics career.

245.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane IMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## J. JANE JMSU DOE

246.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

247.   Plaintiff Jane JMSU Doe began treating with Dr. Nassar in 1997 or 1998 at his office at MSU.  She was seen two times.

248.   Plaintiff JMSU Doe was in her 30s at the time of her encounters with Defendant Nassar.

249.   Plaintiff Jane JMSU Doe presented to Defendant Nassar with complaints of knee pain.

250.   At both appointments with Defendant Nassar, Nassar massaged/manually examined Plaintiff's upper thigh and digitally penetrated Plaintiff Jane JMSU Doe's vagina with his finger or knuckle without prior notice and without gloves or lubricant.

251.   Plaintiff Jane JMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

252.   Based on Defendant Nassar's representations, Plaintiff Jane JMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## K. JANE KMSU DOE

253.   In 2010, Plaintiff Jane KMSU Doe was a minor, approximately 15 years old.  Jane KMSU Doe is and was at that time a swimmer.

254.   Plaintiff Jane KMSU Doe presented to Nassar with complaints of right shoulder, back, and neck pain as well as headaches. Plaintiff treated with Nassar until 2011.

255. Plaintiff Jane KMSU Doe then reestablished care with Nassar in February or April of 2015, primarily for treatment of her right shoulder.

256. Plaintiff treated with Nassar until mid- to late August 2016, with her last appointment being approximately August 16, 2016.

257. At these appointments at his office at MSU, Nassar would put his hands under Plaintiff's sports bra and massage her breasts outside the scope of medicine under the guise of providing legitimate medical treatment for Claimant's shoulder, back, and rib pain.

258. On August 31, 2016, Claimant received a voicemail from MSU Sports Medicine indicating she would have to reschedule her next appointment because Nassar was on "personal leave."

259. Plaintiff Jane KMSU Doe did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

260. Based on Defendant Nassar's representations and representations made by other individuals affiliated with the MSU defendants, Plaintiff Jane KMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## L. JANE LMSU DOE

261. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

262. Plaintiff Jane LMSU Doe treated with Defendant Nassar at his office at MSU beginning in 2002.

263. At that time, Jane LMSU Doe was a minor, approximately 16 years old.

264.    Plaintiff Jane LMSU Doe presented to Defendant Nassar with complaints of right groin
        pain.

265.    Plaintiff Jane LMSU Doe had appointments with Defendant Nassar approximately once
        per week.

266.    At numerous appointments at his office at MSU, Defendant Nassar directed Plaintiff to lay
        on her back, he would massage her groin, and then digitally penetrate Plaintiff Jane LMSU
        Doe's vagina.

267.    Defendant Nassar represented to Plaintiff that penetration was necessary.  Nassar did not
        ask Plaintiff if the touching made her uncomfortable.

268.    Defendant Nassar did not wear gloves for these "treatments."

269.    During these appointments, no nurse would be present in the room for the "treatment."

270.    Plaintiff Jane LMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN
        issues.

271.    Based on Defendant Nassar's representations and representations of other individuals
        affiliated with the MSU defendants, Plaintiff Jane LMSU Doe believed the "treatment" she
        received to be legitimate medical procedures until reports surfaced in or about September
        2016 of similar allegations made by other women.

**M. JANE MMSU DOE**

272.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous
        paragraphs.

273.    From 2006 to 2009, Claimant Jane MMSU Doe was a patient of Lawrence Nassar.

274.    During that time, she was a minor, approximately 14 to 17 years old.

275.    Claimant Jane MMSU Doe presented to Nassar with complaints of back pain.

40

276.   Although Claimant never complained to Nassar about the pain of physical therapy, Nassar offered a "treatment" involving pressing on a pressure point near Claimant's vagina.

277.   Over the course of three years, Nassar massaged Claimant Jane MMSU Doe's vaginal area multiple times when no such treatment was indicated.

278.   Nassar did not wear gloves for these "treatments."

279.   Claimant Jane MMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

280.   Based on Defendant Nassar's representations, Claimant Jane MMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**N. JANE NMSU DOE**

281.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

282.   Beginning in 2010, Claimant Jane NMSU Doe presented to Dr. Nassar with complaints of back pain.

283.   At the time of her "treatments" with Defendant Nassar, Plaintiff NMSU Doe was a minor, approximately 14 years old when she began seeing him.

284.   On several occasions, at appointments at his office at MSU, Nassar sexually assaulted Claimant Jane NMSU Doe.

285.   Specifically, Nassar would place his ungloved hands near Claimant's vaginal area, then digitally penetrate Claimant's vagina and anus.

41

286.    Nassar did not give prior notice or obtain consent for his conduct or explain the details of the procedure to Claimant.

287.    Claimant Jane NMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

288.    Based on Defendant Nassar's representations, Claimant Jane NMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**O. JANE OMSU DOE**

289.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

290.    In 2006 or 2007, Claimant Jane OMSU Doe was a 9- or 10-year-old gymnast at Twistars.

291.    She was referred by John Geddert to Lawrence Nassar for sports injury related pain.

292.    Beginning in 2006 or 2007, Claimant Jane OMSU Doe presented to Dr. Nassar for treatment.

293.    At the time of her "treatments" with Defendant Nassar, Plaintiff OMSU Doe was a minor, approximately 10 years old.

294.    On several occasions, at appointments at his office at MSU, Nassar sexually assaulted Claimant Jane OMSU Doe.

295.    Specifically, Nassar would place his ungloved hands near Claimant's vaginal area, then digitally penetrate Claimant's vagina and anus.

296.    Nassar would also rub Claimant's breasts under her clothing.

297.    Nassar did not give prior notice or obtain consent for his conduct or explain the details of the procedure to Claimant.

298.   Claimant's mother would often be in the room for these "treatments," but Nassar would position his body in such a way as to prevent Claimant's mother from observing.

299.   Claimant Jane OMSU Doe would also see Nassar at Nassar's house.

300.   Nassar would engage in other inappropriate conduct with Claimant, contacting her on social media even after September of 2016.

301.   Claimant Jane OMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

302.   Based on Defendant Nassar's representations, Claimant Jane OMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**P. JANE PMSU DOE**

303.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

304.   Plaintiff Jane PMSU Doe treated with Defendant Nassar at his office at MSU beginning in 2009.

305.   At that time, Jane PMSU Doe was a minor, approximately 13 years old. She first met Defendant Nassar after gymnastics practice at Defendant Twistar's Dimondale location.

306.   Plaintiff Jane PMSU Doe presented to Defendant Nassar with complaints of back pain.

307.   Defendant Nassar would "crack" Plaintiff's back and perform acupuncture.

308.   While Defendant Nassar was "adjusting" Plaintiff's back, he would place one hand on Plaintiff's groin and insert his finger into her vagina.

309.   Defendant Nassar digitally penetrated Plaintiff Jane PMSU Doe's vagina on at least four occasions.

310.   Defendant Nassar did not give prior notice or obtain consent for digital penetration.

311.   Plaintiff Jane PMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

312.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane PMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**Q. JANE QMSU DOE**

313.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

314.   In 2014, Claimant Jane QMSU Doe presented to Dr. Nassar with complaints of back and hip pain.

315.   At the time of her "treatments" with Defendant Nassar, Plaintiff QMSU Doe was a minor, approximately 17 years old when she began seeing him.

316.   On several occasions, at appointments at his office at MSU, Nassar sexually assaulted Claimant Jane QMSU Doe.

317.   Specifically, Nassar digitally penetrated Claimant's vagina under the guise of medical treatment.

318.   Nassar did not give prior notice or obtain consent for his conduct or explain the details of the procedure to Claimant.

319.   Claimant Jane QMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

320. Based on Defendant Nassar's representations, Claimant Jane QMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**R. JANE RMSU DOE**

321. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

322. Plaintiff Jane RMSU Doe treated with Dr. Nassar in 2014 and 2015 at his office at MSU.

323. Plaintiff Jane RMSU Doe was a varsity rower during that time.

324. Plaintiff Jane RMSU Doe presented to Defendant Nassar with complaints of lower back pain.

325. On several occasions at appointments at his office at MSU, Defendant Nassar manipulated a pressure point at the very bottom of Plaintiff's spine, between her upper buttocks muscles, without gloves. Nassar would also engage in inappropriate sexual dialog.

326. Plaintiff Jane RMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

327. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane RMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**S. JANE SMSU DOE**

328. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

329.   Plaintiff Jane SMSU Doe treated with Dr. Nassar in 2012 at his office at MSU, when she was 17 years old.

330.   Plaintiff Jane SMSU Doe was a ballerina during that time.

331.   Plaintiff Jane SMSU Doe presented to Defendant Nassar with complaints of ankle pain.

332.   At appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff's vagina. Nassar did not wear gloves or use lubricant, nor did he adequately explain the "treatment" or its purpose.

333.   Other members of ballet troupe knew of this "treatment," and stated among themselves that Nassar was the first person to "finger f***" them (the ballerinas).

334.   Plaintiff Jane SMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

335.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane SMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**T. JANE TMSU DOE**

336.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

337.   Plaintiff Jane TMSU Doe treated with Dr. Nassar in 1998 at his office at MSU, when she was 18 to 19 years old.

338.   Plaintiff Jane SMSU Doe was a cross country runner at Michigan State University during that time.

339.   Plaintiff Jane SMSU Doe presented to Defendant Nassar with complaints of pelvic pain.

46

340.  At her first appointment at his office at MSU, Defendant Nassar digitally penetrated Plaintiff's vagina. Nassar did not wear gloves or use lubricant, nor did he adequately explain the "treatment" or its purpose.

341.  Plaintiff Jane SMSU Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

342.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane SMSU Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## VI. CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A. COUNT ONE

**VIOLATIONS OF TITLE IX**
**20 U.S.C. §1681(a), *et seq.***
**DEFENDANTS MSU, MSU TRUSTEES**

343.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

344.  Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"

345.  Plaintiffs are "persons" under the Title IX statutory language.

346.  Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

347. Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

348. The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.

349. Defendant Nassar's actions and conduct were carried out under one or more of Defendant MSU programs, which provides medical treatment to students, athletes, and the public.

350. Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiffs vaginal area, and touching of Plaintiffs breasts constitutes sex discrimination under Title IX.

351. By at least 1999 and/or 2000, and as early as 1997 or 1998, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

352. The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following complaints of sexual assault, abuse, and molestation in or around 1999 and/or 2000.

353. The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

354. The victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

       a. Defendant Nassar was sexually aroused while touching her;

b. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

355.   Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."

356.   Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.

357.   The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge Nassar posed a substantial risk of additional sexual abuse of females whom he had unfettered access.

358.   After the 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals.

359.   The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

a. failing to investigate and address allegations as required by Title IX;

b. failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

c. failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

360.    The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

361.    The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

        a. A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

        b. That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.

362.    The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

363.    Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiffs on and off school premises.

364.    The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

365. The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiffs.

366. The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiffs to further harassment and a sexually hostile environment, effectively denying them all access to educational opportunities at MSU, including medical care.

367. As a or the direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### B. COUNT TWO

**VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, DEFENDANT NASSAR**

368. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

369. Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

370. Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

371.  At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

372.  The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

373.  The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

374.   As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

375.  The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

376.  Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he

employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event. .. "

377.   Defendant MSU's aforementioned internal policies were violated as early as 1997 when an individual reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

378.    Defendant MSU's aforementioned internal policies were violated in again in 1999 and 2000 when other individuals reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address these complaints.

379.   The MSU Defendants' failure to address the above-described complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

380.   Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

381.   Ultimately, Defendants failed to adequately and properly investigate the complaints of Plaintiffs or other similarly-situated individuals including but not limited to failing to:

> a. perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiffs after receiving complaints in 1999 and 2000;
>
> b. thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

c. recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

d. ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

382. As indicated in the U.S. Department of Education Office of Civil Rights report, the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

383. Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

384. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

385. The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. §1983 for maintaining customs, policies, practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

386. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline

Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

387.   The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

388.   The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiffs.

389.   As a or the direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### C. COUNT THREE

### VIOLATIONS OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101

390.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

391.   The Elliot-Larsen Civil Rights Act ("Elliot-Larsen") prohibits discrimination based on sex. MCL 37.2102.

392.   "Discrimination because of sex includes sexual harassment." MCL 37.2.103(i).

393.   "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(i).

394. Elliot-Larsen protects against sexual harassment in educational institutions.

395. MSU is an educational institution pursuant to MCL 37.2401.

396. An educational institution shall not "discriminate against an individual in the *full utilization of or benefit* from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a) (emphasis added).

397. Elliot-Larsen also protects against sexual harassment in places of public accommodation. MCL 37.2302. Under this section, an individual shall not be denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex." MCL37.2302(a).

398. MSU is a "place of public accommodation" because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a).

399. Plaintiffs are "persons" within the meaning of MCL 37.2103(g).

400. Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes, and the general public, wherein MSU, through MSU Sport Medicine Clinic, solicits and markets to people like Plaintiffs, and places Plaintiffs within the University community.

401. Nassar's actions and conduct toward Plaintiffs denied them the full and equal enjoyment of MSU's services at a place of public accommodation, in violation of Elliot-Larson.

402. Nassar's actions and conduct toward Plaintiffs of nonconsensual sexual assault, battery, and molestation, which includes unconsented touching and rubbing of Plaintiffs' genitalia, breasts, and unconsented digital penetration of Plaintiff's vagina, constitute sex discrimination under Elliot-Larsen.

403.    As a or the direct and/or proximate result of the MSU and Nassar's actions and inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D. COUNT FOUR**

**FAILURE TO TRAIN AND SUPERVISE**
**42 U.S.C. § 1983**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, NASSAR, STRAMPEL,**
**KOVAN, STOLLAK, and KLAGES**

404.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

405.    The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendants Nassar, Strampel, Kovan, Klages and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

406.    The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

a. Perceive, report, and stop inappropriate sexual conduct on campus;

b. Provide diligent supervision over student-athletes and other individuals;

c. Report suspected incidents of sexual abuse or sexual assault;

d. Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

e. Provide a safe environment for all students, faculty, staff, and visitors to

Defendant MSU's premises free from sexual harassment; and,

f. Properly train faculty and staff to be aware of their individual responsibility for

creating and maintaining a safe environment.

407.   The above list of duties is not exhaustive.

408.   The MSU Defendants and their individual employees and agents, namely Defendants
Strampel, Kovan, Klages, and Stollak, had a duty to report suspected sexual abuse.

409.   The MSU Defendants and their individual employees and agents, namely Defendants
Strampel, Kovan, Klages, and Stollak failed to report sexual abuse about which they knew
or should have known.

410.   The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others
regarding the aforementioned duties which led to violations of Plaintiffs rights.

411.   As a result, the MSU Defendants deprived Plaintiffs of rights secured by the Fourteenth
Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

412.   The MSU Defendants failed warn or advise current and former patients of Defendant
Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that
the patients received was not medical treatment at all but was potentially sexual assault.

413.   The MSU Defendants failed to offer counseling services to current of former patients of
Defendant Nassar, including Plaintiffs.

414.   As a or the direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs
suffered and continue to suffer pain of mind and body, shock, emotional distress, physical
manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright,
grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be

58

prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**E. COUNT FIVE**

**GROSS NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, NASSAR, STRAMPEL, KOVAN, STOLLAK, and KLAGES**

415.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

416.     The MSU Defendants owed Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

417.     Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

418.     By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

419.     The MSU Defendants and their individual employees and agents, namely Defendants Strampel, Kovan, Klages, and Stollak, had a duty to report suspected sexual abuse.

420.     The MSU Defendants and their individual employees and agents, namely Defendants Strampel, Kovan, Klages, and Stollak failed to report sexual abuse about which they knew or should have known.

421.     The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual

touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

422.  Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

423.  The MSU Defendants' conduct and the conduct of their individual employees and agents demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

424.  The MSU Defendants' conduct conduct and the conduct of their individual employees and agents as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

425.  The MSU Defendants conduct and the conduct of their individual employees and agents, namely Defendants Strampel, Kovan, Stollak, and Klages, breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

426.  The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

427.  The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiffs.

428.   As a or the direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F. COUNT SIX**

**NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, NASSAR, STRAMPEL, KOVAN, KLAGES, and STOLLAK**

429.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

430.   The MSU Defendants and their individual employees and agents, namely Defendants Strampel, Kovan, Klages, and Stollak owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

431.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

432.   Defendant Nassar owed Plaintiffs a duty of ordinary care.

433.   The MSU Defendants and their individual employees and agents, namely Defendants Strampel, Kovan, Klages, and Stollak, had a duty to report suspected sexual abuse.

434.    The MSU Defendants and their individual employees and agents, namely Defendants Strampel, Kovan, Klages, and Stollak failed to report sexual abuse about which they knew or should have known.

435.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

436.    The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1997 or 1998, again in 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

437.    The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

438.    The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

439.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

440.    The MSU Defendants failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

441.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiffs.

442.    As a or the direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### G. COUNT SEVEN

**VICARIOUS LIABILITY**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

443. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

444. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

445. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

446. The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

447. Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.

448. The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young

female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

449.    As a or the direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**H. COUNT EIGHT**

**EXPRESS/IMPLIED AGENCY**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS**

450.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

451.    An agent is a person who is authorized by another to act on its behalf.

452.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

453.    On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

454.    Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

455.    Plaintiffs were injured because they relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

456.    As a or the direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### I. COUNT NINE

### NEGLIGENT SUPERVISION
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, STRAMPEL, KOVAN, STOLLAK, and KLAGES

457.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

458.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiffs.

459.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

460. The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel, Gary E. Stollak, Kathie Klages, or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

461. The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

462. The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

463. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

464. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

465. The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiffs.

466.   As a or the direct and/or proximate result of the Defendants' negligent supervision, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**J. COUNT TEN**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

467.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

468.   The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

469.   As early as 1997, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

470.   The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

471.   The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

472. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiffs.

473. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

474. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, breached their duties to protect Plaintiffs by failing to:

      a. respond to allegations of sexual assault, abuse, and molestation;

      b. detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

      c. investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

475. The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiffs' rights.

476. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

477. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, failed warn or advise current and former patients of

68

Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

478.    As a or the direct and/or proximate result of the Defendants' negligent failure to warn or protect, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### K. COUNT ELEVEN

### NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, STRAMPEL, KOVAN, STOLLAK, and KLAGES

479.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

480.    The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, breached their duty to take reasonable protective measures to protect Plaintiffs and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

481.    The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, failed to implement reasonable safeguards to:

    a. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

b. Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

482.   As a or the direct and/or proximate result of the Defendants' negligent failure to train or educate, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## L. COUNT TWELVE

### NEGLIGENT RETENTION
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS

483.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

484.   The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

485.   The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

486.   The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

487.     The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs and an unknown number of other individuals.

488.     The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

489.     As a or the direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

**M. COUNT THIRTEEN**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, STRAMPEL, KOVAN,**
**STOLLAK, and KLAGES**

490.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

491.     The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

492.     A reasonable person would not expect the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, to tolerate or permit

their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

493. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages,  held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

494. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

495. A reasonable person would not expect the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

496. The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, failed warn or advise current and former patients of Defendant Nassar, including Plaintiffs, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

497. The MSU Defendants' conduct and the conduct of their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, as described above was intentional and/or reckless.

498. The conduct described above constitutes extreme and outrageous conduct.

72

499.   As a or the direct and/or proximate result of the Defendants' conduct, Plaintiffs suffered continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**N. COUNT FOURTEEN**

**FRAUD AND MISREPRESENTATION**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS, STRAMPEL, KOVAN, STOLLAK,**
**and KLAGES**

500.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

501.   From approximately 1996 to September 2016, the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

502.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

503.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

504.   As of 1999 and 2000, the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, knew their representations of Defendant Nassar were false as at least two individuals had complained of Defendant Nassar's conduct to MSU representatives.

505.   Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the complaints.

506.   The MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, continued to hold Defendant Nassar out as a competent and safe physician.

507.   Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.

508.   As a result of complaints made about Defendant Nassar's conduct, the MSU Defendants imposed restrictions on Defendant Nassar's practice, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2)

procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

509. Between the time of the 2014 complaint and September 2016 and in spite of the above-described restrictions, the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, continued to hold Defendant Nassar out as a competent and safe physician.

510. The public in general and the Plaintiffs in particular were not made aware of the restrictions on Defendant Nassar's practice.

511. Plaintiffs relied on the assertions of the MSU Defendants and their individual employees or agents, namely Defendants Strampel, Kovan, Stollak, and Klages, and several Plaintiffs continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

512. Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' and their individual employees or agents' fraudulent misrepresentations regarding Defendant Nassar.

513. As a or the direct and/or proximate result of the Defendants' fraudulent misrepresentations, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

### VII. CLAIMS AGAINST USA GYMNASTICS

**A. COUNT FIFTEEN**

**GROSS NEGLIGENCE**
**ALL PLAINTIFFS**
**AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

514.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

515.   Defendant USAG owed the public and the Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

516.   The Plaintiffs are or were members of USAG, participated in USAG sanctioned events, and/or were knowledgeable of USAG and considered it to be a prestigious organization. In some cases Plaintiffs were referred to Defendant Nassar through USAG affiliations.

517.   Defendant Nassar owed Plaintiffs a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG.

518.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

519.   Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

520.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

521.   Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiffs' safety.

522.   Defendant USAG's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

523.   Defendant USAG breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

524.   As a direct and/or proximate result of Defendant USAG's actions and/or inactions, Plaintiffs suffered continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B. COUNT SIXTEEN**

**NEGLIGENCE**
**ALL PLAINTIFFS**
**AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

525.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

526.  Defendant USAG owed the public and Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

527.  Plaintiffs had a reasonable expectation that the USAG was recommending, employing, and holding out competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

528.  By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

529.  Defendant Nassar owed Plaintiffs duty of ordinary care in carrying out medical treatment.

530.  Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

531.  Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

532.  Defendant USAG's failure to inform Plaintiffs and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

533.  Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs was a breach of the duty to use ordinary care.

534.  As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## C. COUNT SEVENTEEN

### VICARIOUS LIABILITY
### ALL PLAINTIFFS AGAINST DEFENDANT USAG

535.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

536.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

537.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

538.   Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.

539.   Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

540.   Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

541.   As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiffs

suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D. COUNT EIGHTEEN**

**EXPRESS/IMPLIED AGENCY**
**ALL PLAINTIFFS AGAINST DEFENDANT USAG**

542.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

543.  An agent is a person who is authorized by another to act on its behalf.

544.  Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

545.  On the basis of those representations, Plaintiffs reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

546.  Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendant USAG.

547.  Plaintiffs were injured because they relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

548.  As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright,

grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**E. COUNT NINETEEN**

**NEGLIGENT SUPERVISION**
**ALL PLAINTIFFS AGAINST DEFENDANT USAG**

549.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

550.   Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiffs.

551.   It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

552.   Defendant USAG by and through their employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

553.   Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

554.   The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

555.   Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

556.   As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F. COUNT TWENTY**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**ALL PLAINTIFFS AGAINST DEFENDANT USAG**

557.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

558.   Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

559.   Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

560.   Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

561. Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

562. Defendant USAG had a duty to warn or protect the public, Plaintiffs, and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

563. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiffs.

564. Defendant USAG breached said duty by failing to warn the public and the Plaintiffs and/or by failing to take reasonable steps to protect the public and the Plaintiffs from Defendant Nassar.

565. Defendant USAG breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

566. Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiffs' rights.

567. Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

568. As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### G. COUNT TWENTY-ONE

### NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### ALL PLAINTIFFS AGAINST DEFENDANT USAG

569.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

570.    Defendant USAG breached its duty to take reasonable protective measures to protect the public and Plaintiffs from the risk of sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

571.    Defendant USAG failed to implement reasonable safeguards to:

    a. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

    b. Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

572.    As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**H. COUNT TWENTY-TWO**

**NEGLIGENT RETENTION**
**ALL PLAINTIFFS AGAINST DEFENDANT USAG**

573.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

574.    Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

575.    Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

576.    Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

577.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs as well as an unknown number of other individuals.

578.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

579.    As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## I. COUNT TWENTY-THREE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ALL PLAINTIFFS AGAINST DEFENDANT USAG

580. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

581. Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

582. A reasonable person would not expect Defendant USAG to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

583. Defendants USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

584. Defendants USAG protected Defendant Nassar in part to bolster his national and international reputation in the gymnastics community.

585. A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

586. Defendant USAG's conduct as described above was intentional and/or reckless.

587. As a direct and/or proximate result of Defendant USAG's intentional infliction of emotional distress, Plaintiffs suffered and continue to suffer pain of mind and body, shock,

emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## J. COUNT TWENTY-FOUR

### FRAUD AND MISREPRESENTATION
### ALL PLAINTIFFS AGAINST DEFENDANT USAG

588.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

589.   From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was a competent, ethical, and safe physician.

590.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

591.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

592.   Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiffs, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiffs and others.

593.  Plaintiffs relied on the assertions of Defendant USAG and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

594.  Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

595.  As a direct and/or proximate result of Defendant USAG's fraud and misrepresentation, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## VIII. CLAIMS AGAINST TWISTARS

### A. COUNT TWENTY-FIVE

### GROSS NEGLIGENCE
### ALL PLAINTIFFS AGAINST DEFENDANTS TWISTARS, NASSAR, and GEDDERT

596.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

597.  Defendant Twistars and Defendant Geddert owed the public and the Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

598.  Defendant Nassar owed Plaintiffs a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

599.  By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary

relationship between Plaintiffs Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

600. Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars and Defendant Geddert not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendants' actions were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

601. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

602. Defendant Twistars' conduct and the conduct of Defendant Geddert demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

603. Defendant Twistars' conduct and the conduct of Defendant Geddert as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

604. Defendant Twistars and Defendant Geddert breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

605. As a direct and/or proximate result of Defendants' gross negligence, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B. COUNT TWENTY-SIX**

**NEGLIGENCE**
**ALL PLAINTIFFS**
**AGAINST DEFENDANTS TWISTARS, NASSAR, and GEDDERT**

606.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

607.    In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Defendant Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

608.    Despite being informed of Defendant Nassar's conduct, Defendant Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

609.    Defendant Geddert owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation.

610.    In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Defendant Geddert breached the duty of ordinary care to Plaintiffs and the public.

611.    Defendant Twistars breached the duty of ordinary care to Plaintiffs and the public in failing to investigate the 1998 allegations which were made to Defendant Geddert.

612.    Defendant Twistars and Defendant Geddert breached the duty of ordinary care to Plaintiffs and the public by failing to report the 1998 allegations, which were made to Defendant Geddert, to law enforcement.

613.    Plaintiffs, as members the public, in taking the recommendation of Defendant Geddert to seek medical treatment from Defendant Nassar had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting them to sexual assault, abuse, or molestation.

614.    By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

615.    Defendant Nassar owed Plaintiffs a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

616.    Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at their facility breached the duty of ordinary care.

617.    Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiffs in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

618.    As a direct and/or proximate result of Defendants' negligence, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**C. COUNT TWENTY-SEVEN**

**EXPRESS/IMPLIED AGENCY**
**ALL PLAINTIFFS AGAINST DEFENDANTS TWISTARS and GEDDERT**

619.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

620.   An agent is a person who is authorized by another to act on its behalf.

621.   Defendant Twistars intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

622.   On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

623.   Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

624.   Plaintiffs were injured because they relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

625.   As a direct and/or proximate result of Defendant Twistars' negligent failure to train or educate, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### D. COUNT TWENTY-EIGHT

**NEGLIGENT SUPERVISION**
**ALL PLAINTIFFS AGAINST DEFENDANTS TWISTARS and GEDDERT**

626.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

627.   Defendant Twistars and Defendant Geddert each had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female athletes including Plaintiffs.

628.   It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children and young women, including Plaintiffs, unless properly supervised.

629.   Defendant Twistars by and through their employees, agents, managers, and/or assigns, and in particular by Defendant Geddert, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1998 complaint made to Defendant Geddert of the nonconsensual sexual touching during "treatment."

630.   Defendant Twistars and Defendant Geddert breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

631.   The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant Twistars, and while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

632.   Defendant Twistars and Defendant Geddert tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately

screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

633.    As a direct and/or proximate result of Defendants' negligent failure to supervise, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## E. COUNT TWENTY-NINE

### NEGLIGENT FAILURE TO WARN OR PROTECT
### ALL PLAINTIFFS AGAINST DEFENDANTS TWISTARS and GEDDERT

634.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

635.    Defendant Twistars and Defendant Geddert knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

636.    As early as 1998, Defendant Twistars, by a complaint made to its owner/employee/agent/representative Defendant John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

637.    Defendant Twistars and Defendant Geddert knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

638.    Defendant Twistars and Defendant Geddert had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

639. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an agent/representative/employee of Defendant Twistars and Plaintiffs.

640. Defendant Twistars and Defendant Geddert breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

641. Defendant Twistars and Defendant Geddert breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

642. Defendant Twistars and Defendant Geddert breached its duties to protect Plaintiffs by failing to investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

643. Defendant Twistars and Defendant Geddert failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiffs' rights.

644. Defendant Twistars and Defendant Geddert willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

645. As a direct and/or proximate result of Defendants' negligent failure to warn or protect, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## F. COUNT THIRTY

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ALL PLAINTIFFS AGAINST DEFENDANTS TWISTARS and GEDDERT

646.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

647.    Defendant Twistars and Defendant Geddert allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults at its facility and other places.

648.    A reasonable person would not expect Defendant Twistars and Defendant Geddert to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

649.    Defendant Twistars and Defendant Geddert held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar, seek his services, and to not question his methods or motives.

650.    Defendant Twistars and Defendant Geddert protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars' reputation in the gymnastics community.

651.    A reasonable person would not expect Defendant Twistars and Defendant Geddert to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on their premises and at their facility.

652.   Defendant Twistars' conduct and the conduct of Defendant Geddert as described above was intentional and/or reckless.

653.   As a direct and/or proximate result of Defendants' intentional infliction of emotional distress, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**G. COUNT THIRTY-ONE**

**FRAUD AND MISREPRESENTATION**
**ALL PLAINTIFFS AGAINST DEFENDANT TWISTARS and GEDDERT**

654.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

655.   From approximately 1996 to September 2016, Defendant Twistars and Defendant Geddert represented to Plaintiffs and the public that Defendant Nassar was a competent, ethical, and safe physician.

656.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars and Defendant Geddert represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

657. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of individuals, at times at Defendant Twistars' facility.

658. As early as 1998, Defendant Twistars and Defendant Geddert knew their representations of Defendant Nassar were false as Defendant Twistars and Defendant Geddert received a complaint of Defendant Nassar's conduct.

659. Between the time of the 1998 complaint and September 2016, Defendant Twistars and Defendant Geddert continued to hold Defendant Nassar out as a competent and safe physician.

660. Plaintiffs relied on the assertions of Defendants Twistars and Defendant Geddert and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

661. Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars' and Defendant Geddert's fraudulent misrepresentations regarding Defendant Nassar.

662. As a direct and/or proximate result of Defendants' fraud and misrepresentation, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## IX. CLAIMS AGAINST NASSAR

### A. COUNT THIRTY-TWO

**ASSAULT & BATTERY**
**ALL PLAINTIFFS AGAINST**
**DEFENDANT LAWRENCE NASSAR**

663.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

664.  The acts committed by Defendant Nassar against Plaintiffs described herein constitute

assault and battery, actionable under the laws of Michigan.

665.  Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or

offensive contact with the bodies of Plaintiffs.

666.  Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by

subjecting them to an imminent battery and/or intentional invasions of their rights to be

free from offensive and harmful contact, and said conduct demonstrated that Defendant

had a present ability to subject Plaintiffs to an immediate, intentional, offensive and

harmful touching.

667.  Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital

vaginal penetration, digital anal penetration, and touching some of Plaintiffs' breasts

without notice or explanation of the "treatment."

668.  Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

669.  As a direct and/or proximate result of Defendant Nassar's negligent failure to train or

educate, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will

continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

99

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B. COUNT THIRTY-THREE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR**

670.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

671.   Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiffs, and an unknown number of other individuals, minors, and young adults.

672.   Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

673.   A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

674.   Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiffs over several years, from approximately 1996 to 2016.

675.   Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

676.   As a direct and/or proximate result of Defendant Nassar's negligent failure to train or educate, Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## C. COUNT THIRTY-FOUR

### INVASION OF PRIVACY

677.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

678.   Defendant Nassar intruded upon Plaintiffs' seclusion or solitude by sexually assaulting, abusing, and molesting Plaintiffs without the consent of Plaintiffs or Plaintiffs' parents.

679.   Plaintiffs' genital area, breasts, and sexual activity are secret and private subject matters.

680.   Plaintiffs possessed a right to keep these subject matters private.

681.   Some of the Plaintiffs lost their virginity when Defendant Nassar sexually assaulted, abused, and molested them.

682.   Defendant Nassar's method of sexually assaulting, abusing, and molesting Plaintiffs is objectionable to a reasonable person.

683.   As a or the direct and/or proximate result of Defendant Nassar's outrageous conduct, Plaintiffs suffered discomfort and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

# X. LOSS OF CONSORTIUM CLAIMS

## A. COUNT THIRTY-FIVE

### PLAINTIFFS JOHN BMSU DOE, JOHN DMSU DOE, JOHN HMSU DOE, AND JOHN IMSU DOE AGAINST ALL DEFENDANTS

684. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

685. Plaintiffs John BMSU Doe, John DMSU Doe, John HMSU Doe, and John IMSU Doe are married to Jane BMSU Doe, Jane DMSU Doe, Jane HMSU Doe, and Jane IMSU Doe, respectively.

686. As a or the result of the above-described conduct and consequent damages sustained by their respective spouses, Plaintiffs John BMSU Doe, John DMSU Doe, John HMSU Doe, and John IMSU Doe have suffered the following damages:

    A.    An interference with the marital relationship, including marital conjugal fellowship;

    B.    An interference with love, affection, and society;

    C.    An interference with the enjoyment of their spouses' company and companionship in and about the household, including the loss of pleasurable enjoyment of recreational activities outside the household;

    D.    An interference with services and financial support, and Plaintiffs are fearful that these losses have and will affect the household and standard of living.

    E.    Severe emotional distress, mental anguish and anxiety in the past, present and into the unknown future and permanently.

## XI. DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

687.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

688.    As a or the direct and/or proximate result of Defendants' conduct, actions, or inactions,

Plaintiffs suffered and continue to suffer pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem,

disgrace, fright, grief, humiliation, and loss of enjoyment of life, were prevented and will

continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning

capacity.

689.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts

and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as

well as the common and/or statutory laws of the State of Michigan, and the United States

District Court has jurisdiction to hear and adjudicate said claims.

690.    In whole or in part, as a result of some or all of the above actions and/or inactions of

Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the

violations.

691.    The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of

$75,000.00.

WHEREFORE, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs'

favor against all named Defendants on all counts and claims as indicated above in an

amount consistent with the proofs of trial, and seeks against Defendants all appropriate

damages arising out of law, equity, and fact for each or all of the above counts where

applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a) Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c) Reasonable attorney fees, interest, and costs; and,

d) Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

**Respectfully Submitted,**

Dated: March 10, 2017

/s/ David S. Mittleman
**David S. Mittleman**
ChurchWyble PC, a division of
Grewal Law, PLLC
Attorneys for Plaintiffs
2290 Science Parkway
Okemos, Michigan 48864
Ph.: (517) 372-1011
Fax: (517) 372-1031
E: dmittleman@churchwyble.com

Dated: March 10, 2017                              /s/ Mick S. Grewal_____

                                                                 **Mick S. Grewal**
                                                                 ChurchWyble PC, a division of
                                                                 Grewal Law, PLLC
                                                                 Attorneys for Plaintiffs
                                                                 2290 Science Parkway
                                                                 Okemos, Michigan 48864
                                                                 Ph.: (517) 372-1011
                                                                 Fax: (517) 372-1031
                                                                 E: mgrewal@4grewal.com


## **JURY DEMAND**

        Plaintiffs, by and through their attorneys, ChurchWyble, PC, a division of Grewal Law,

PLLC, hereby demand a trial by jury on all claims set forth above.


Dated: March 10, 2017                              /s/ David S. Mittleman_____

                                                                 **David S. Mittleman**
                                                                 ChurchWyble PC, a division of
                                                                 Grewal Law, PLLC
                                                                 Attorneys for Plaintiffs
                                                                 2290 Science Parkway
                                                                 Okemos, Michigan 48864
                                                                 Ph.: (517) 372-1011
                                                                 Fax: (517) 372-1031
                                                                 E: dmittleman@churchwyble.com




Dated: March 10, 2017                              /s/ Mick S. Grewal_____

                                                                 **Mick S. Grewal**
                                                                 ChurchWyble PC, a division of
                                                                 Grewal Law, PLLC
                                                                 Attorneys for Plaintiffs
                                                                 2290 Science Parkway
                                                                 Okemos, Michigan 48864
                                                                 Ph.: (517) 372-1011
                                                                 Fax: (517) 372-1031
                                                                 E: mgrewal@4grewal.com


DSM/MSG/NLE