**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION**

| | |
|---|---|
| RACHAEL DENHOLLANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICHIGAN STATE UNIVERSITY, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-00029-GJQ-SJB<br><br>HON. GORDON J. QUIST<br><br>**PLAINTIFFS' UNOPPOSED STIPULATION AND PROPOSED ORDER TO APPOINT LIEN RESOLUTION ADMINISTRATOR AND PROPOSED QUALIFIED PROTECTIVE ORDER TO AUTHORIZE DISCLOSURE OF CLAIMANTS' PROTECTED HEALTH INFORMATION PURSUANT TO HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA)** |

Plaintiffs/147 Settling Claimants ("Settling Claimants"), represented herein by the following law firms: Manly, Stewart & Finaldi; Drew Cooper & Anding; and White Law PLLC ("Counsel for Settling Claimants"), hereby stipulate, agree, and request an Order of this Court as follows:

**WHEREAS**, on December 16, 2021, the Court presiding over *In Re: USA Gymnastics, Inc.*, Case No. 18-09108-RLM-11 entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Third Amended Joint Chapter 11 Plan of Reorganization Proposed by USA Gymnastics and the Additional Tort Claimants Committee of Sexual Abuse Survivors* (the "Confirmation Order") [Case No. 18-09108-RLM-11, Docket No. 1776], which confirmed the *Modified Third Amended Joint Chapter 11 Plan of Reorganization Proposed by USA Gymnastics and the Additional Tort Claimants Committee of Sexual Abuse Survivors* (the "Plan") [Case No. 18-09108-RLM-11, Docket No. 1764]. The Plan provided for a settlement of $380 million dollars for the benefit of all Abuse Claimants in that action, including the Settling Claimants, herein.

1

**WHEREAS,** Settling Claimants acknowledge that any and all entities, individuals, Government Programs, or governmental agencies (including but not limited to Social Security, public welfare agencies, and taxing authorities) who have or may have an interest in, lien on, or right of subrogation in a Settling Claimant's allocated share have been or will be notified by Settling Claimant, their counsel, or the QSF Trustee, through a lien resolution process, that a settlement has occurred and that any claims of such entities, individuals, Government Programs, and governmental agencies will be satisfied by the Settling Claimant's allocated share, unless waived; and,

**WHEREAS** Settling Claimants acknowledge that they may have responsibility for the reimbursement and/or repayment of liens, debts, and other obligations against them relating in any way to the Actions, whether known or unknown, including, but not limited to, claims for legal, medical or psychological advice, care, treatment or services, or claims asserted by any attorney, health care provider or insurer, Governmental Program, governmental agency, or Medicare Secondary Payer Recovery Contractor pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, and that they may need to defend, indemnify, and hold harmless Defendants from any claims by any third-party who has or may have an interest in, lien on, or right of subrogation in any Settling Claimant's Allocated Share from the settlement; and,

**WHEREAS,** for Settling Claimants, if any proceeds that a respective Settling Claimant may receive as a result of the settlement become subject to a claim by any Government Program, then, in advance of payment to that respective Settling Claimant by the QSF Trustee, from the QSF, that respective Settling Claimant's Counsel shall hold, and not distribute to that respective Settling Claimant, funds equal to the amount of the claim against the respective Settling Claimant by the Government Program, in an escrow account without distributing the held funds to the respective Settling Claimant or any other person or entity until the claim by the Government Program has been satisfied or waived; and,

**WHEREAS,** furthering the interests mentioned herein with respect to the potential of liens against recoveries, Settling Claimants' counsel, on behalf of all Settling Claimants, respectfully

move this Court for entry of an order: (1) appointing The Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort ("Epiq") as the Lien Resolution Administrator for any settlements into which the Settling Claimants may enter in this action; and (2) pursuant to 45 C.F.R. § 164.512(e)(1)(i), authorizing Governmental Payors,[1] Medicare Part C and Part D Program sponsors,[2] other private health plans (whether insured or self-funded), payors, or providers, and other Covered Entities,[3] and any Business Associate[4] of one of the foregoing persons or entities (each a "Healthcare Entity") to exchange Settling Claimants' Protected Health Information[5] with Epiq in the performance of its duties and functions as the Lien Resolution Administrator; and,

**WHEREAS** Settling Claimants' counsel, on behalf of Settling Claimants, have retained Epiq to serve as the QSF and Lien Resolution Administrator for their settlements in this action and in the lien resolution role, Epiq will act on behalf of the Settling Claimants to resolve medical liens and/or reimbursement claims that Healthcare Entities might assert against a Settling Claimants' settlement award; and,

**WHEREAS** lien resolution is one of the most complex and demanding conditions to settlement, requiring early involvement and specialized expertise to identify reimbursement obligations and facilitate timely resolution in the event a settlement is reached, and as such, Epiq is commonly engaged well prior to any settlement negotiations to help the parties understand the

---

[1] "Governmental Payors" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs. These include the federal Medicare fee-for-service (Parts A and B) program administered by the Centers for Medicare and Medicaid Services ("CMS"); the Medicare Secondary Payer Department; the Medicaid programs of each state and territory and of the District of Columbia; the United States Department of Veterans Affairs; the Defense Health Agency (which oversees TRICARE health insurance programs); the Medical Cost Recovery Units of the Armed Services as part of the Judge Advocate General's Corps., responsible to address Federal Medical Cost Recovery Act claims under 42 U.S.C. § 2651, 10 U.S.C. § 1095 and/or 38 U.S.C. § 1729; and Indian Health Services.
[2] "Medicare Part C or Part D Program" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with CMS.
[3] "Covered Entity" has the meaning set forth in 45 C.F.R. § 160.103.
[4] "Business Associate" has the meaning set forth in 45 C.F.R. § 160.103.
[5] "Protected Health Information" has the meaning set forth in 45 C.F.R. § 160.103.

3

scope and extent of any liens or reimbursement obligations as well as the anticipated reimbursement values; and,

**WHEREAS** each year, Epiq resolves thousands of healthcare lien obligations for firms and companies across the country and Epiq's consolidated lien resolution programs have been utilized in numerous mass tort and class action settlements such as *Jane Doe et. al. v. University of Southern California and Dr. George Tyndall,* Los Angeles Superior Court Case no. BC 705677, *Jane Doe, et al. v. Regents of the University of California, et al.* (Case No. 19STCV42645); *In re National Football League Players' Concussion Injury Litigation*, MDL Docket No. 2323 (E.D. Pa.), *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), *In re Avandia Marketing, Sales Practices, and Product Liability Litigation*, MDL Docket No. 1871 (E.D. Pa.), and *In Re: Vioxx Products Liability Litigation*, MDL No. 1657-L (E.D. La.); and,

**WHEREAS** such programs set forth uniform, compliant procedures that avoid the enormous time delays often associated with large numbers of claimants attempting to satisfy and discharge healthcare lien obligations one at a time; and,

**WHEREAS** undertaking these transactions requires Epiq to coordinate with scores of Governmental Payors, Medicare Part C and Part D Program sponsors, and private health plans, payors, and providers and their respective recovery contractors, and having performed this work for more than fifteen years and across a wide variety of engagements, Epiq has strong and established work flow procedures with each of these entities and consequently, Epiq is well qualified to serve as the Lien Resolution Administrator for potential settlements in this action; and,

**WHEREAS** to resolve the liens and recovery claims asserted by the aforementioned entities, Epiq is required to exchange Settling Claimants' Protected Health Information with them and under HIPAA,[6] a Covered Entity such as a Governmental Payor, Medicare Part C or Part D

---

[6] "HIPAA" means the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) and the implementing regulations issued thereunder, 45 C.F.R. Parts 160, 162, and 164, and shall incorporate by reference the provisions of the Health Information Technology for Economic and Clinical Health

4

Program sponsor, or a private health plan or provider may not use or disclose Protected Health Information unless the use or disclosure is permitted by HIPAA. 45 C.F.R. § 164.502(a); and.

**WHEREAS** one instance in which a Covered Entity is permitted to disclose protected health information is when it is presented with a valid authorization for the disclosure of that information. *Id.* § 164.502(a)(1)(iv). Another is when the disclosure is "required by law." *Id.* §§ 164.502(a)(1)(vi), 164.512(a). Specifically, the HIPAA regulations provide:

(a) Standard: Uses and disclosures required by law.

(1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law.

(2) A covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law. 45 C.F.R. § 164.512(a); and,

**WHEREAS** the regulations define "required by law" to mean "a mandate contained in law that compels an entity to make a use or disclosure of protected health information and that is enforceable in a court of law and required by law includes, but is not limited to, court orders and court-ordered warrants …"; and,

**WHEREAS** furthermore, 45 C.F.R. § 164.512(e)(1)(i) provides, "[a] covered entity may disclose protected health information in the course of any judicial or administrative proceeding ... [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order... ." and thus, a Covered Entity may disclose Protected Health Information in response to a court order if it discloses only the Protected Health Information permitted by the order; and,

**WHEREAS** similarly, Business Associates of Covered Entities, such as the lien recovery contractors of governmental and private health plans, are generally prohibited from disclosing

---

Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)).

5

Protected Health Information but are permitted to do so to the extent they are presented with a valid authorization for the disclosure (and the disclosure is permitted by their business associate contracts) or the disclosure is "required by law." 45 C.F.R. § 164.502(a)(3) ("A business associate may use or disclose protected health information only as permitted or required by its business associate contract or other arrangement pursuant to § 164.504€ or as required by law."); and,

**WHEREAS** in class action and aggregate settlements with numerous claimants, the task of reviewing individual HIPAA authorizations to determine their completeness and validity can place a significant administrative burden on Healthcare Entities such as Governmental Payors, Medicare Part C and Part D Program sponsors, and private health plans, payors, and providers, which delays the resolution of liens the release of funds to the claimants and, accordingly, courts routinely enter orders to facilitate the exchange of Protected Health Information with respect to medical liens in class action and aggregate settlements, including in the following matters and others in which Epiq has served as the Lien Resolution Administrator:

a. *In re National Football League Players' Concussion Injury Litigation*, Case No. 2:12-md-2323, MDL No. 2323, ECF No. 7472 (E.D. Pa. Apr. 11, 2017);

b. *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, Case No. 1:13-cv-9116, MDL No. 2492, ECF No. 279 (N.D. Ill. July 15, 2016);

c. *In re ACTOS (Pioglitazone) Products Liability Litigation*, Case No. 6:11-md-2299, ECF No. 5797 (W.D. La. July 30, 2015);

d. *In re Boston Scientific Corporation Pelvic Repair System Products Liability Litigation*, Case No. 2:12-md-2326, ECF No. 1054 (S.D. W. Va. Feb. 26, 2015);

e. *In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation*, Case No. 2:12-md-2325, ECF No. 1144 (S.D. W. Va. Feb. 26, 2014);

f. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179, ECF No. 6673 (E.D. La. June 14, 2012); and,

g. *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, Case No. 2:07-md-01871, ECF No. 690 (E.D. Pa. June 11, 2010); and,

**WHEREAS** entering an order appointing Epiq as the Lien Resolution Administrator and authorizing Epiq in that capacity to exchange Settling Claimants' Protected Health Information with Covered Entities, the Business Associates of Covered Entities, and other holders of healthcare liens or recovery claims in the manner set forth below would expedite the lien resolution process and would allow Settling Claimants to more quickly receive any unused portion of the amounts that may be withheld from their settlement awards to satisfy potential healthcare liens or recovery claims, and,

**IT IS HEREBY STIPULATED** by and between the Settling Claimants and Defendants Twistars, USA Gymnastics, and the United States Olympic and Paralympic Committee, who request this Court enter the following Order that:

- a. appoints Epiq as the Lien Resolution Administrator for these 147 Settling Claimants, in the above-captioned action;

- b. authorizes Epiq, as the Lien Resolution Administrator, to act as the agent for these Settling Claimants in the above-captioned action for the purpose of identifying and resolving potential liens and/or recovery claims for medical items, services, and/or prescription drugs with all Healthcare Entities in any manner deemed necessary or advisable by Epiq, including, but not limited to, (i) *en masse* data submissions with such Healthcare Entities for the purpose of identifying healthcare coverage and related claims itemizations for Settling Claimants, and (ii) accessing Internet-based healthcare coverage information sources, including, but not limited to, www.mymedicare.gov;

- c. specifies that Epiq's obligation to resolve any such liens or recovery claims shall be governed by the terms of Epiq's contract(s) with these Settling Claimants' counsel, and/or Settling Claimants, as applicable, and that nothing in the order shall be construed to impose any duties or obligations on Epiq;

- d. grants Epiq the exclusive authority to develop a uniform and consolidated process with CMS for the global identification and resolution of Medicare Part A and/or Part B fee-for-service reimbursement claims on behalf of these Settling Claimants in the above-captioned action who are or were Medicare beneficiaries

- e. authorizes and requires any Healthcare Entity who receives a request from Epiq, in the performance of its functions and duties as the Lien Resolution Administrator, for these Settling Claimants' Protected Health Information to disclose that information to Epiq in response to the request;

- f. authorizes any Healthcare Entity who receives a request from Epiq, in the performance of its functions and duties as the Lien Resolution

7

      Administrator, to disclose these Settling Claimants' Protected Health Information in a list or other aggregated format to disclose the information in the format requested in lieu of submitting such information on a case-by-case basis;

g. authorizes Epiq to disclose these Settling Claimants' Protected Health Information to a Healthcare Entity in the performance of its functions and duties as the Lien Resolution Administrator;

h. authorizes Epiq, in making a disclosure contemplated by Paragraph 9(g) of this motion, to disclose these Settling Claimants' Protected Health Information to Healthcare Entities in lists or other aggregated formats in lieu of submitting such information on a case-by-case basis; and

i. clarifies that the order eliminates the need for individual HIPAA authorizations for disclosures requested or made pursuant to the order, consistent with 45 C.F.R. §§ 164.512(a), (e)(1)(i).

**IT IS SO STIPULATED.**

Dated: August 3, 2022     By:     s/ Stephen R. Drew
                                                            Stephen R. Drew (P24323)
                                                            DREW COOPER & ANDING
                                                            Attorneys for Plaintiffs
                                                            80 Ottawa Avenue NW, Suite 200
                                                            Grand Rapids, Michigan 49503
                                                            Phone: (616) 454-8300
                                                            E-mail: sdrew@dca-lawyers.com

Dated: August 3, 2022     By:     s/ John C. Manly (with permission)
                                                            John C. Manly (CA 149080)
                                                            MANLY, STEWART & FINALDI
                                                            Attorneys for Plaintiffs
                                                            19100 Von Karman Avenue, Suite 800
                                                            Irvine, California 92612
                                                            Phone: (949) 252-9990
                                                            E-mail: jmanly@manlystewart.com

                                                            *Attorneys for Plaintiffs*
                                                            Lead Case No.:
                                                            1:17-cv-00029-GJQ-SJB

                                                            Member Case Nos.
                                                            1:18-cv-01055-GJQ-SJB
                                                            1:18-cv-01346-GJQ-SJB

Dated: August 3, 2022      By:    s/ James White (with permission)
                                              James White (P56946)
                                              WHITE LAW PLLC
                                              2459 Jolly Road, Suite 340
                                              Okemos, MI 48864
                                              (517) 316-1195

                                              *Attorneys for Plaintiffs*
                                              Member Case Nos.:
                                              1:17-cv-00257-GJQ-SJB
                                              1:18-cv-01052-GJQ-SJB
                                              1:18-cv-01059-GJQ-SJB
                                              1:18-cv-01348-GJQ-SJB

**APPROVED AS TO FORM:**


s/ Rebecca L. Strauss (with permission)
Rebecca L. Strauss (P64796)
MILLER JOHNSON
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, Michigan 49501-0306

*Attorneys for Defendant USA Gymnastics, Inc.*


s/ Cameron R. Getto (with permission)
Cameron R. Getto (P57300)
ZAUSMER, AUGUST & CALDWELL P.C.
32255 Northwestern Highway, Suite 225
Farmington Hills, MI 48334
(248) 851-4111

*Attorneys for Defendants Twistars USA Inc.,*
*John Geddert and Kathryn Geddert*


s/ John R. Oostema (with permission)
E. Thomas McCarthy, Jr. (P28714)
John R. Oostema (P26891)
SMITH HAUGHEY RICE & ROEGGE
100 Monroe Center NQ
Grand Rapids, MI 49503-2802

*Attorneys for Defendant United States Olympic*
*And Paralympic Committee*

9

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

RACHAEL DENHOLLANDER, *et al.*,

    Plaintiffs,

v.

MICHIGAN STATE UNIVERSITY, *et al.*,

    Defendants.

Case No. 1:17-cv-00029-GJQ-SJB

HON. GORDON J. QUIST

**ORDER GRANTING PLAINTIFFS' UNOPPOSED STIPULATION TO APPOINT LIEN RESOLUTION ADMINISTRATOR AND GRANTING QUALIFIED PROTECTIVE ORDER TO AUTHORIZE DISCLOSURE OF CLAIMANTS' PROTECTED HEALTH INFORMATION PURSUANT TO HEALTH INSURANCE PORTAILITY AND ACCOUNTABILITY ACT (HIPAA)**

---

**THE COURT**, having read and considered the Unopposed Stipulation of the Plaintiffs/147 Settling Claimants and Proposed Order to Appoint Epiq as Lien Resolution Administrator and Proposed Qualified Protective Order to Authorize the Disclosure of the Settling Claimants' Protected Healthcare Information pursuant to HIPAA, and being fully advised, **HEREBY ORDERS AS FOLLOWS:**

    **AS TO THESE PLAINTIFFS/147 SETTLING CLAIMANTS, THIS COURT:**

    a.    appoints Epiq as the Lien Resolution Administrator for these 147 Settling Claimants in the above-captioned action;

    b.    authorizes Epiq, as the Lien Resolution Administrator, to act as the agent for these Settling Claimants in the above-captioned action for the purpose of identifying and resolving potential liens and/or recovery claims for medical items, services, and/or prescription drugs with all Healthcare Entities (as defined above in the Stipulation) in any manner deemed necessary or advisable by Epiq, including, but not limited to, (i) *en masse* data submissions with such Healthcare Entities for the purpose of identifying healthcare coverage and related claims itemizations for Settling

   Claimants, and (ii) accessing Internet-based healthcare coverage information sources, including, but not limited to, www.mymedicare.gov;

 c. specifies that Epiq's obligation to resolve any such liens or recovery claims shall be governed by the terms of Epiq's contract(s) with Settling Claimants' counsel, and/or Settling Claimants, as applicable, and that nothing in the order shall be construed to impose any duties or obligations on Epiq;

 d. grants Epiq the exclusive authority to develop a uniform and consolidated process with CMS for the global identification and resolution of Medicare Part A and/or Part B fee-for-service reimbursement claims on behalf of these Settling Claimants in the above-captioned action who are or were Medicare beneficiaries;

 e. authorizes and requires any Healthcare Entity who receives a request from Epiq, in the performance of its functions and duties as the Lien Resolution Administrator, for these Settling Claimants' Protected Health Information to disclose that information to Epiq in response to the request;

 f. authorizes any Healthcare Entity who receives a request from Epiq, in the performance of its functions and duties as the Lien Resolution Administrator, to disclose these Settling Claimants' Protected Health Information in a list or other aggregated format to disclose the information in the format requested in lieu of submitting such information on a case-by-case basis;

 g. authorizes Epiq to disclose these Settling Claimants' Protected Health Information to a Healthcare Entity in the performance of its functions and duties as the Lien Resolution Administrator;

 h. authorizes Epiq, in making disclosures contemplated by this Stipulation, to disclose these Settling Claimants' Protected Health Information to Healthcare Entities in lists or other aggregated formats in lieu of submitting such information on a case-by-case basis; and,

 i. orders that, consistent with 45 C.F.R. §§ 164.512(a), (e)(1)(i), individual HIPAA authorizations are not required for any disclosure requested or made pursuant to this Order.

**IT IS SO ORDERED.**

Dated: August __, 2022  By: _____
              GORDON J. QUIST
              UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

  The foregoing document was filed electronically on the 3rd day of August 2022 in accordance with this Court's ECF system. Notice of this filing will be sent to all parties by operation of this Court's ECF system, including the Settlement Trustee.

Dated: August 3, 2022    By: /s/ Stephen R. Drew
                Stephen R. Drew (P24323)
                Adam C. Sturdivant (P72285)
                DREW COOPER & ANDING
                Attorneys for Plaintiffs
                80 Ottawa Avenue NW, Suite 200
                Grand Rapids, Michigan 49503
                Phone: (616) 454-8300
                E-mail: sdrew@dca-lawyers.com
                E-mail: asturdivant@dca-lawyers.com